UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ARTIS MOORE,

        Petitioner,

vs.

E.K. McDANIEL, *et al.*,

        Respondents.

3:07-cv-0240-RCJ-RAM

**ORDER**

        This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel. This matter comes before the Court on the merits of the amended petition.

**I. Background and Procedural History**

        On June 5, 1998, petitioner and a co-defendant were charged with burglary while in possession of a firearm, conspiracy to commit robbery, robbery with the use of a deadly weapon, murder with the use of a deadly weapon, second degree kidnapping with the use of a deadly weapon, and battery with the use of a deadly weapon. (Exhibit 1). Petitioner filed a motion to sever, and the

1   state district court granted the motion on August 24, 1998. (Exhibit 7).[1] A second amended
2   indictment was filed on February 18, 1999. (Exhibit 10).

3           The matter proceeded to jury trial on February 18, 1999. (Exhibits 11-17, 19-20). On
4   February 24, 1999, the jury found petitioner guilty of one count of burglary while in possession of a
5   firearm, one count of conspiracy to commit robbery, two counts of robbery with the use of a deadly
6   weapon, two counts of murder with the use of a deadly weapon, seven counts of second degree
7   kidnapping with the use of a deadly weapon, and one count of battery with the use of a deadly
8   weapon. (Exhibits 18, 21).

9           Petitioner was sentenced on April 12, 1999, as follows: Count 1, burglary while in
10  possession of a firearm, 40-180 months; Count II, conspiracy to commit robbery, 16-72 months, to
11  run concurrent with Count I; Count III, robbery with the use of a deadly weapon, 40-180 months,
12  with an equal and consecutive 40-180 months, to run concurrent with Count II; Count IV, robbery
13  with the use of a deadly weapon; 40-180 months, with an equal and consecutive 40-180 months, to
14  run concurrent with Count III; Count V, murder with the use of a deadly weapon, life without the
15  possibility of parole, with an equal and consecutive life without the possibility of parole sentence, to
16  run consecutive to Count IV; Count VI, second degree murder with the use of a deadly weapon, life
17  without the possibility of parole, with an equal and consecutive life without the possibility of parole
18  sentence, to run consecutive to Count V; Count VII, second degree kidnapping with the use of a
19  deadly weapon, 40-180 months, with an equal and consecutive 40-180 months to run concurrent with
20  Count VI; Count VIII, second degree kidnapping with the use of a deadly weapon, 40-180 months,
21  with an equal and consecutive 40-180 months to run concurrent with Count VII; Count IX, second
22  degree kidnapping with the use of a deadly weapon, 40-180 months, with an equal and consecutive
23  40-180 months to run concurrent with Count VIII; Count X, second degree kidnapping with the use

---

[1] Unless otherwise indicated, the exhibits referenced in this order are found in the Court's record at Docket #25-32.

of a deadly weapon, 40-180 months, with an equal and consecutive 40-180 months to run consecutive with Count IX; Count XI, second degree kidnapping with the use of a deadly weapon, 40-180 months, with an equal and consecutive 40-180 months to run consecutive with Count X; Count XII, second degree kidnapping with the use of a deadly weapon, 40-180 months, with an equal and consecutive 40-180 months to run consecutive with Count XI; XIII, second degree kidnapping with the use of a deadly weapon, 40-180 months, with an equal and consecutive 40-180 months to run concurrent with Count XII; and Count XIV, battery with the use of a deadly weapon, 40-180 months to run consecutive to Count XIII. (Exhibit 31). The court also ordered petitioner to pay $4,417.28 restitution jointly and severally with his co-defendant, and to submit to a blood/saliva test to determine genetic markers, and to pay $250 for the testing. (Exhibit 31). The court gave petitioner 328 days of credit for time served. (Exhibit 22). The judgment of conviction was filed on September 8, 1999. (Exhibit 31).

On April 13, 1999, petitioner filed a notice of appeal. (Exhibit 23). Petitioner's trial counsel filed a motion to withdraw as petitioner's counsel on appeal, which was denied by the Nevada Supreme Court. (Exhibits 26, 27). The state district court appointed trial counsel Wommer to represent petitioner on his appeal. (Exhibit 28). Petitioner's opening brief contained the argument, that "the district court erred in failing to grant a mistrial after appellant contacted one of the jurors by telephone." (Exhibit 33). The Nevada Supreme Court dismissed petitioner's appeal. (Exhibit 38). Remittitur issued on August 10, 2000. (Exhibit 39).

On August 30, 2000, petitioner filed a motion for withdrawal of attorney Wommer and transfer of records. (Exhibit 41). Wommer withdrew from the case on September 11, 2000. (Exhibit 43). The state district court granted petitioner's motion on September 27, 2000. (Exhibit 44).

On January 8, 2001, petitioner filed his state habeas petition, raising grounds of ineffective assistance of trial counsel and appellate counsel. (Exhibit 45). The state district court

denied the petition. (Exhibit 47). Petitioner appealed. (Exhibit 48). The Nevada Supreme Court remanded the matter for the district court to reconsider whether counsel should be appointed for petitioner. (Exhibit 56). On remand, the district court appointed David Schieck as counsel to assist petitioner in his habeas case. (Exhibit 57). Counsel filed a supplemental pleading that raised additional grounds for relief. (Exhibit 61). The district court conducted an evidentiary hearing on September 23, 2004. (Exhibit 65). The district court denied the petition in findings of fact and conclusions of law, filed December 9, 2004. (Exhibit 66). The district court denied attorney Schieck's motion to withdraw from representing petitioner on the state post-conviction appeal. (Exhibit 67). Petitioner filed his notice of appeal on January 11, 2005. (Exhibit 68). Counsel filed the opening brief on June 15, 2005. (Exhibit 69). On December 1, 2006, the Nevada Supreme Court affirmed the denial of petitioner's state habeas petition. (Exhibit 72). Remittitur issued on December 29, 2006. (Exhibit 73).

This Court received petitioner's *pro se* federal habeas petition on May 18, 2007. (Docket #1, #4). By order filed November 29, 2007, the Court granted the Federal Public Defender's motion to represent petitioner. (Docket #12). Through counsel, petitioner's amended petition was filed on September 25, 2008. (Docket 24). Respondents moved to dismiss the amended petition. (Docket #36). On July 24, 2009, this Court entered an order denying the motion to dismiss and directing respondents to file an answer to the amended petition. (Docket #43). Respondents filed an answer on August 31, 2009. (Docket #45). Petitioner filed a reply on November 25, 2009. (Docket #52).

**II. Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

>      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams,* 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams,* 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v.*

5

1  *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th
2  Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by
3  a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting
4  the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**III. Discussion**

**A. Statute of Limitations Argument Waived**

In the answer, respondents argue that Grounds One, Two, Six, Seven, Eight, and Ten of the amended petition are untimely and do not relate back to the original petition. (Answer, Docket #45, at pp. 14-16). Petitioner argues in his reply that respondents' argument is untimely and contrary to this Court's orders. (Reply, Docket #52, at pp. 2-5).

"Under the Federal Rules of Civil Procedure, a party, with limited exceptions, is required to raise every defense in its first responsive pleading, and defenses not so raised are deemed waived. *See* Fed. R. Civ. P. 8(c); Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(g)." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005). In *Morrison*, the court reasoned that a defense was not untimely, because a motion to dismiss did not count as a "responsive pleading" under Federal Rule of Civil Procedure 7(a). *Id.* at 1046-47. The court in *Morrison* noted that "separate motions to dismiss" were proper "unless a court has ordered otherwise." *Id.* at 1046. Thus, *Morrison* recognizes the district court's authority to prevent endless procedural litigation by barring parties from raising defenses in successive motions or pleadings.

In the instant case, this Court specifically ordered that "respondents shall raise all potential affirmative defenses in the initial responsive pleading" and that "successive motions to dismiss will not be entertained." (Docket #8, at p. 2). Respondents filed their motion to dismiss the amended petition on December 10, 2008. (Docket #36). Respondents raised various procedural defenses in their motion to dismiss, but did not raise a statute of limitations defense. (*Id.*). In contravention of this Court's order to raise all potential affirmative defenses in the initial responsive

pleading, respondents argue, for the first time in their answer, that several grounds of the amended petition are untimely and do not relate back to the original petition. (Answer, Docket #45, at pp. 14-16). Respondents' tardy arguments of untimeliness and failure to relate back are deemed waived and will not be considered by this Court. The Court now proceeds to the merits of the amended petition.

### B. Merits Discussion

#### Ineffective Assistance of Counsel Standard

The amended petition raises several grounds of ineffective assistance of counsel. Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390-391 (2000) (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quotations omitted). If the state court has already rejected an

7

ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard. *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

**Ground One**

Petitioner alleges: "Mr. Moore's trial counsel failed to voir dire the jury regarding the potential penalty phase of the trial. Because of this failure, which fell below the standards of effective assistance of counsel, Mr. Moore is imprisoned in violation of his Sixth and Fourteenth Amendment right to the effective assistance of counsel under the United States Constitution." (Amended Petition, Docket #24, at p. 9). The Nevada Supreme Court reviewed and rejected this argument, as follows:

> Moore argues that Wommer was ineffective when he did not adequately voir dire the jurors and failed to appeal the district court's denial of Moore's Batson challenge. However, the record reveals that Wommer was active in voir dire, questioning jurors and exercising preemptory challenges and challenges for cause. The record also reveals non-discriminatory reasons for the State's preemptory challenge to one African-American juror. See Batson v. Kentucky, 476 U.S. 79 (1986); Williams v. State, 121 Nev. ___, ___, 125 P.3d 627, 634 (2005). Consequently, we conclude that these arguments are without merit.

(Exhibit 72, at p. 3, n.2). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). The record supports the Nevada Supreme Court's finding that Wommer was active in voir dire. (Exhibit 9). Trial attorney Wommer chose not to voir dire jurors regarding the penalty phase for strategic reasons. (Exhibit 65, at p. 8). Reasonable strategic decisions are permissible. *Strickland*, 466 U.S. at 690-91. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground One.

8

### Ground Two

Petitioner alleges: "Trial counsel failed to object to highly prejudicial victim impact statements made during the guilt phase of trial. Because of this failure, which fell below the standards of effective assistance of counsel, Mr. Moore is imprisoned in violation of his Sixth and Fourteenth Amendment right to the effective assistance of counsel under the United States Constitution." (Amended Petition, Docket #24, at p. 10). The Nevada Supreme Court considered this claim and ultimately rejected it:

> Moore next argues that Wommer failed to object to the State's derogatory comments about Moore and statements of victim impact during trial. He also argues that Wommer failed to raise these issues on appeal.
>
> *       *       *
>
> The second set of statements is the state's use of victim impact testimony during the guilt phase of Moore's trial. Christie Bloomquist testified that she had trouble working evenings. Cheryl Koehn testified that she had only been back to O'Aces three times, lived in fear, continued to wake up in the morning at exactly the time of the robbery, and that she has trouble going to work and coming home in the dark. The State also incorporated victim impact testimony into its closing arguments.
>
> Victim impact testimony is recognized as one of the most prejudicial forms of testimony. It is irrelevant to guilt and is usually excluded from a trial's guilt phase. Thus, Bloomquist's and Koehn's testimony in this regard was irrelevant to Moore's guilt and erroneously admitted. Wommer never made any objection to these arguments, thus not preserving the issue for appeal. And he did not appeal the victim impact statements for this court's plain error review. Therefore, we conclude that Wommer's performance in this regard fell below what was expected of trial and appellate counsel.
>
> However, counsel's deficient performance must also prejudice the defendant. Our review of the evidence indicates that the State presented overwhelming evidence of Moore's guilt. Thus, the State's prosecutorial misconduct is harmless error. Therefore, we conclude that Wommer's performance did not constitute ineffective representation.

(Exhibit 72, at pp. 6-8). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). The Nevada Supreme Court's finding that the State presented overwhelming evidence of

9

1  petitioner's guilt at trial is entitled to deference. (*Id.*). Petitioner has not demonstrated deficient
2  performance of counsel and prejudice under *Strickland*, 466 U.S. at 694. Petitioner has failed to
3  meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an
4  unreasonable application of, clearly established federal law, as determined by the United States
5  Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of
6  the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground
7  Two.

### Ground Three

Petitioner alleges: "Trial counsel failed to investigate and present mitigating evidence regarding Mr. Moore's family background and diminished capacity during the penalty phase of the trial. Because of this failure, which fell below the standards of effective assistance of counsel, Mr. Moore is imprisoned in violation of his Sixth and Fourteenth Amendment right to the effective assistance of counsel under the United States Constitution." (Amended Petition, Docket #24, at p. 12). The Nevada Supreme Court considered and rejected this claim, as follows:

> First, Moore argues that Wommer failed to conduct an investigation into his IQ and upbringing, which may have negated the intend required for specific intent crimes or mitigated his sentence. While Wommer does have a duty to investigate, it is not limitless.
>
> In this case, Wommer stated that he never questioned Moore's intellect because Moore was conversant with him, even discussing religious philosophy. To the extent that Moore argues that counsel should always look for IQ/special education issues, counsel is not required to go on a fishing expedition that the evidence does not support. To the extent that Moore argues that he was unaware that a robbery was occurring, the evidence shoes otherwise.
>
> Regarding investigation into mitigating witnesses, Wommer called Moore's father and attempted to call his grandmother, who could not e found when her time to testify arrived. Wommer did not call Moore's aunt because "her abrasiveness would have been picked up by the jury, and it would have inured badly to Mr. Moore." Wommer did not call the mother of Moore's child because Wommer felt that the fact that they were not married may have a negative connotation with the jury.

> Thus, Wommer's decisions regarding placement of Moore's family members on the stand in mitigation were tactical and do not give rise to a presumption of ineffectiveness simply because they did not succeed. We conclude that Wommer's investigation was not ineffective.

(Exhibit 72, at pp. 4-5) (footnotes omitted). The Nevada Supreme Court found that Wommer's decision to call only certain members of petitioner's family was a tactical decision. The Court also found that Wommer's lack of investigation into petitioner's mental capacity was reasonable in light of the interaction he had with petitioner. The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). These facts do not support petitioner's contention that counsel's representation fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Three.

**Ground Four**

Petitioner alleges: "Trial counsel ceased to act as his client's advocate during the trial when, acting against his client's interests, he betrayed confidential information to the court, and agreed to exclude his client from critical proceedings in the case. Because of trial counsel's actions, which constituted ineffective assistance of counsel, Mr. Moore is imprisoned in violation of his Sixth and Fourteenth Amendment right to the effective counsel and an adversarial trial." (Amended Petition, Docket #24, at p. 15). The Nevada Supreme Court considered this claim as follows:

> Moore also argues that Wommer was ineffective because he had a conflict of interest with Moore stemming from Moore's jury contact that required new counsel be appointed for Moore. During trial, the lone African-American juror told the district court that her husband had been contacted by an anonymous male who said that she "was on the jury on his case." During the ensuing jury tampering investigation, Wommer spoke with Moore. After their conversation, Wommer expressed concern regarding possible ethical conflicts to the district

11

court. The district court ordered Wommer to disclose any information regarding "any possible criminal activity." Wommer related that Moore initially said that he had contacted the dismissed juror and other jurors as well, but denied doing so when asked a second time.

The district court dismissed the juror and, outside Moore's presence, conducted voir dire. As a result, it was determined that no other jurors had been contacted. Moore rejoined the district court, at which time Wommer moved for a mistrial and to withdraw from the case. Wommer stated that Moore lacked any credibility with him. The district court denied both motions and continued the trial.

The exchange implicates (1) an attorney's duty of confidentiality and attorney/client privilege, (2) Wommer's ability to continue to represent Moore, (3) Wommer's conflict of interest with Moore, and (4) Moore's absence from the courtroom during voir dire.

First, Moore's jury tampering and statements to Wommer present a tension between an attorney's duty of confidentiality to his client and his duty of candor toward the court. In this instance, however, we conclude that Wommer, as an officer of the court, was bound to reveal the information to the district court so that it could take remedial action and declare a mistrial, if necessary. To conclude otherwise would endorse a defendant's criminal acts and a potential miscarriage of justice.

Second, Wommer's statement that Moore had no credibility with him does not indicate per se ineffective assistance of counsel. Wommer stated in the evidentiary hearing that he and Moore were able to amicably work together after the jury tampering.

Third, Wommer's duty, as an officer of the court, and the district court's order to reveal Moore's statements to the district court, present a conflict of interest between Moore's penal interest regarding the jury tampering and Wommer as a witness. The Sixth Amendment's guarantee of effective assistance of counsel is violated when an attorney has a conflict with his client. But, "'[a]ttorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense.'" While Wommer was a witness to Moore's alleged jury tampering, Moore was not investigated or charged criminally for jury tampering and Wommer did not testify to the jury in this case. Thus, the potential conflict of interest did not prejudice Wommer's representation of Moore. Accordingly, we conclude that the conflict of interest does not constitute ineffective assistance of counsel.

Fourth, Moore was absent from the courtroom while the district court investigated the jury tampering. While Moore has a right to be present and confront witnesses against him, the Constitution does not guarantee the defendant a right to be present where the defendant's

12

> "presence would be useless." An inquiry into Moore's jury tampering and legal argument for a motion for mistrial do not involve witnesses testifying against Moore about the crimes for which he is being tried. Therefore, we conclude that Moore was not denied his constitutional rights.

(Exhibit 72, at pp. 8-11).

"The Court has yet to 'define with greater precision the weight to be given to recognized canons of ethics, the standards established by the state in statutes or professional codes, and the Sixth Amendment' in defining the proper scope of and limits on attorney conduct for Strickland purposes." *McClure v. Thompson*, 323 F.3d 1233, 1242 (9th Cir. 2003) (citing *Nix v. Whiteside*, 475 U.S. 157, 165 (1986)). In *Nix v. Whiteside*, a case dealing with a threat of perjury by a criminal defendant, the United States Supreme Court ruled:

> [A]n attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; it specifically ensures that the client may not use false evidence. This special duty of an attorney to prevent and disclose frauds upon the court derives from the recognition that perjury is as much a crime as tampering with witnesses or jurors by way of promises and threats, and undermines the administration of justice.

*Nix v. Whiteside*, 475 U.S. 168-69 (footnotes omitted). The Court found that the defense attorney's conduct fell within the "wide range of professional responses to threatened perjury acceptable under the Sixth Amendment." *Id.*, 475 U.S. at 166. In the instant case, the conduct of petitioner's attorney, Wommer, fell within the accepted range of conduct. "A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Former Nevada Supreme Court Rule 172, Current Nevada RPC 3.3(c). Influencing or attempting to influence a jury is a crime. NRS 199.040. Petitioner is not entitled to relief based on his allegations of conflict of interest. Moreover, petitioner's allegations relating to Wommer's statement that petitioner had "zero credibility" with him is meritless. Petitioner demonstrates no breakdown of the attorney-client relationship, inability

to communicate, or unjust result. The Nevada Supreme Court's factual finding that Wommer and petitioner were able to work together amicably during trial after the jury tampering incident, is entitled to deference. The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Four.

### Ground Five

Petitioner alleges: "Trial counsel failed to file a motion to suppress illegally obtained statements. Because of this failure, which fell below the standards of effective assistance of counsel, Mr. Moore is imprisoned in violation of his Sixth and Fourteenth Amendment right to the effective assistance of counsel under the United States Constitution." (Amended Petition, Docket #24, at p. 19). The Nevada Supreme Court considered and rejected this claim, as follows:

> The police interviewed Moore at the hospital after the robbery and murders. Moore claims that his statements during the interview should have been suppressed because they were involuntary and he was not advised of his rights.
>
> Our review of the facts indicates no unlawful deception or coercion. Moore gave his consent to the LVMP to search his car. Detective Thowsen read Moore his <u>Miranda</u> rights from a card, which both the detective and Moore signed. Moore then voluntarily agreed to speak with the detective. While Moore never specifically refused to answer a question, at some point during the questioning he stated that "he was through talking with [Thowsen]." At the end of the questioning, Moore got up and "demanded to go to jail immediately." Only at that time, after the detectives had finished questioning Moore, did Thowsen forcibly reseat him until he could be transported to jail.
>
> It is true that Thowsen continued speaking to Moore after Moore stated that "he was through talking with [Thowsen]," and that Moore did not receive new <u>Miranda</u> warnings after Thowsen stepped out of the room for a few minutes. However, Moore never stopped answering questions and the detective's absence from the room for a few minutes

14

> during questioning did not require new <u>Miranda</u> warnings. Even if Thowsen's continued questioning after Moore said that he was done speaking to detectives does constitute a violation of Moore's Fifth Amendment rights, the State limited the information it introduced at trial to statements Moore made before that point. Moore suffered no prejudice. Therefore, we conclude that the district court did not err when it allowed the interview into evidence, and Wommer was not ineffective.

(Exhibit 72, at pp. 5-6). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner cites no authority that the Nevada Supreme Court's analysis of this claim involved an objectively unreasonable application of *Strickland*. There was no finding that a *Miranda* violation occurred. Moreover, even if questioning Moore after he stated that he was "through talking" was improper, petitioner suffered no prejudice, as the State never used those statements against him. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Five.

### Ground Six

Petitioner alleges: "The Nevada Supreme Court failed to inquire into a conflict between Mr. Moore and his appellate counsel that adversely affected counsel's representation of Mr. Moore during his appeal. As a result, Mr. Moore is imprisoned in violation of his Sixth and Fourteenth Amendment rights to the effective assistance of appellate counsel and due process under the United States Constitution." (Amended Petition, Docket #24, at p. 20). Specifically, petitioner argues that the Nevada Supreme Court erred when it denied Wommer's motion to withdraw from representation of petitioner on direct appeal. (*Id.*, at pp. 20-21).

In the motion to withdraw as counsel, Wommer did not address the issue of jury tampering by petitioner during the trial or any alleged conflict of interest. (Exhibit 26, at p. 3). Rather, the stated basis for the motion was petitioner's alleged lack of confidence in Wommer and

15

failures denied Mr. Moore the effective assistance of appellate counsel guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution." (Amended Petition, Docket #24, at p. 25). The Nevada Supreme Court, rejected petitioner's claim of ineffective assistance of counsel based on failure to object and to appeal the alleged prosecutorial misconduct, finding that petitioner failed to demonstrate prejudice, and concluding:

> Our review of the evidence indicates that the State presented overwhelming evidence of Moore's guilt. Thus, the State's prosecutorial misconduct is harmless error. Therefore, we conclude that Wommer's performance did not constitute ineffective representation.

(Exhibit 72, at p. 8). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Appellate counsel has no constitutional obligation to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Neither trial counsel's nor appellate counsel's performance fell below an objective standard of reasonableness under prevailing norms. Nor has petitioner satisfied the prejudice prong of the *Strickland* analysis, as he has not shown that, but for the victim impact testimony and the alleged errors of counsel, that the outcome of the proceeding would have been different. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Eight.

### Ground Nine

Petitioner alleges: "Mr. Moore is entitled to relief because of the cumulative effect of errors by his counsel at trial and on direct appeal in violation of the Fourteenth Amendment to the United States Constitution." (Amended Petition, Docket #24, at p. 25). The Nevada Supreme Court considered and rejected petitioner's claim of cumulative error:

> Finally, Moore argues that his conviction should be reversed because of cumulative error. "The considerations relevant to deciding whether

> error is harmless or prejudicial include whether the issue of innocence or guilty is close, the quantity and character of error, and the gravity of the crime charged." As we have stated, the State presented overwhelming evidence of Moore's guilt. Therefore, we conclude that the [sic] any errors do not amount to cumulative error.

(Exhibit 72, at p. 11). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). To the extent that cumulative error may be grounds for federal habeas relief, the Ninth Circuit has announced that: "[T]he combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). This Court has reviewed the state court record and the pleadings filed by the parties. Petitioner has not demonstrated that cumulative errors occurred, and even assuming errors did occur, petitioner has not shown that such errors resulted in a trial that was fundamentally unfair. Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court will deny habeas relief as to Ground Nine.

### Ground Ten

Petitioner alleges: "Mr. Moore's conviction is invalid under federal and state constitutional guarantees of due process of law, equal protection, and a reliable sentence because the trial court failed to properly instruct the jury on the mens rea required to find Mr. Moore liable for murder[ ,] robbery, kidnapping [,] burglary, conspiracy, and battery with the use of a deadly weapon as an aider and abettor. U.S. Const. Amends. V, VIII, XIV." (Amended Petition, Docket #24, at p. 26). Petitioner bases his claim on the holding of *Sharma v. State*, 56 P.3d 868 (Nev. 2002), in which the Nevada Supreme Court held that a person may be found liable as an aider or abettor to an offense only where the State has proven beyond a reasonable doubt that the person had the specific intent to commit the target offense.

19

Issues relating to jury instructions are not cognizable in federal habeas corpus unless they infected the entire trial so as to establish a violation of due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the Constitutional validity of a state court's judgment requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not whether the instruction is "undesirable, erroneous, or even universally condemned." *Henderson v. Kibbe*, 431 U.S. at 154 (citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). In reviewing jury instructions, the court inquires as to whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation. *U.S. v. Garcia-Rivera*, 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted). The question is whether an instruction so infected the entire trial that the resulting conviction violated due process. *Estelle*, 502 U.S. at 72. An instruction may not be judged in isolation, "but must be considered in the context of the instructions as a whole and the trial record." *Id.* Furthermore, jurors are presumed to follow the instructions that they are given. *U.S. v. Olano*, 507 U.S. 725, 740 (1993).

The *Sharma* issue raised by petitioner is a state law issue involving the correctness of instructions under Nevada law regarding aiding and abetting. A jury instruction contrary to state law does not make a federal question under habeas corpus practice. *Estelle v. McGuire*, 502 U.S. at 71-72; *Mitchell v. Goldsmith*, 878 F.2d 219, 324 (9th Cir. 1989). The Ninth Circuit has recognized that a state court's failure to properly instruct the jury on elements of a crime may violate federal due process guarantees. *See Polk v. Sandoval*, 503 F.3d 903, 909-911. However, in the instant case, there is no federal authority on point to support petitioner's argument that the challenged jury instructions, which were allegedly contrary to a Nevada state law decision, violate petitioner's due process rights. The challenged jury instructions were not such that they infected the entire trial and that the resulting conviction violated petitioner's due process. *See Estelle*, 502 U.S. at 72. Petitioner

is not entitled to relief based on the challenged jury instructions given in state court, and this Court denies habeas relief as to Ground Ten of the amended petition.

### IV. Certificate of Appealability

In order to proceed with any appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); see also *United States v. Mikels,* 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id. (quoting Slack,* 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

### V. Conclusion

**IT IS THEREFORE ORDERED** that the amended petition for a writ of habeas corpus (Docket #24) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

1  **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**
2  **ACCORDINGLY.**

Dated this  18th  day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE